UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH VINCENT BRINGARD, )
)
        Plaintiff, ) Case No. 1:06-cv-19
)
v. ) Honorable Wendell A. Miles
)
STEPHEN DeBOER et al., )
)
        Defendants. )
_____)

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

  I.  Factual Allegations

Plaintiff Joseph Bringard is presently incarcerated at the Parnall Correctional Facility. After a jury trial, Plaintiff was convicted in the Oakland County Circuit Court of felonious driving and two counts of manslaughter for a 1985 traffic accident. He was sentenced as a fourth habitual offender to prison terms of one to two years for the felonious driving conviction and fifteen to thirty years for each count of manslaughter. Plaintiff's complaint concerns the denial of his parole by Defendants Stephen DeBoer, Charles Braddock and John Rubitschun, members of the Michigan Parole Board of the Michigan Department of Corrections (MDOC).

  In his amended complaint, Plaintiff alleges that Defendants considered inaccurate information for his parole hearing in violation of MICH. COMP. LAWS § 791.235(5)[1] and his due process rights.[2] During his parole interview on August 31, 2005, Plaintiff informed Defendant DeBoer that he accepted full responsibility for his actions and expressed contrition for the victims. On October 22, 2005, however, Plaintiff received the MDOC Parole Board Notice of Decision (Notice of Decision) with a twenty-four month continuance. On the Notice of Decision, Plaintiff claims that the following information is inaccurate:

---

[1] MICH. COMP. LAWS § 791.235(5) states:

> [e]xcept for good cause, the parole board member conducting the interview shall not have cast a vote for or against the prisoner's release before conducting the current interview. Before the interview, the parole board member who is to conduct the interview shall review pertinent information relative to the notice of intent to conduct an interview.

[2] Plaintiff moves to amend his complaint (docket #10). Because a party may amend his pleading once as a matter of course at any time before a responsive pleading is filed, FED. R. CIV. P. 15(a), Plaintiff's motion will be granted.

> **Correctional Adjustment**
> **The prisoner's prior post conviction corrections history includes:**
> Commission of crime under supervision

Plaintiff argues that he was not under any supervision when he was charged with manslaughter. He also brought this to the attention of the Parole Board at his last parole hearing two years ago. Plaintiff's next parole consideration date is January 16, 2008.

Second, Plaintiff argues that the Parole Board's recommendation to attend Assaultive Offenders Therapy violates the Ex Post Facto Clause because Plaintiff was not originally screened for that program. Even if Plaintiff needs Assaultive Offenders Therapy, he alleges that he cannot enroll in the program without a formal request from the Michigan Parole Board. Plaintiff also argues that changes in the parole guideline scoring system after 1985-86 violates the Ex Post Facto Clause. Because of these alleged changes in MDOC policy, Plaintiff claims that it is more difficult for him to be released on parole.

Finally, Plaintiff claims that Defendants improperly scored his MDOC Parole Guidelines Scoresheet. He argues that he did not commit an "aggravated crime," which is considered under the "Active Sentencing Variables" of the MDOC Parole Guideline Scoresheet. If he had been scored properly, Plaintiff states that he would have received a "high probability of parole." The Parole Board then must give a substantial and compelling reason for denying parole to a prisoner who has a "high probability of parole." MICH. COMP. LAWS § 791.233e(6).

For relief, Plaintiff requests the Court to enter: (1) a declaratory order finding Defendants violated Plaintiff's due process rights, (2) a temporary and permanent injunction against Defendants to restrain them from considering inaccurate information for Plaintiff's parole and using an improper guideline score on the MDOC Parole Guidelines Scoresheet, (3) an order for Plaintiff

to receive a new hearing before the Parole Board, (4) a preliminary and permanent injunction prohibiting Defendants from using "Commission of a Crime under Supervision" and "mandating some sort of Group that would be violative of the Ex Post Facto Laws and Rule of the Land," (5) a declaratory order for this Court to exercise jurisdiction over Plaintiff's state law claims, (6) an injunction preventing the MDOC from using an incorrect parole guideline scoring system, and (7) an order declaring the Michigan Parole Board's acts unconstitutional.

    II.    <u>Section 1983</u>

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997 ). However, in *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1247 (2005), the Supreme Court clarified that §1983 remains available to a state prisoner for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. Plaintiff does not directly seek release from prison; rather, he requests a new parole hearing, and declaratory and injunctive relief, which would prevent

Defendants from violating his federal rights in future parole proceedings. As a consequence, under *Wilkinson*, success in this action would not necessarily demonstrate the invalidity of Plaintiff's continued confinement, so his action does not appear to be *Heck*-barred. Assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

### III. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. **Due Process Clause**

Plaintiff claims that he was deprived of due process when Defendants denied his parole based on inaccurate information. To sustain such a due process claim, Plaintiff must first establish that eligibility for parole is a recognized liberty interest, entitled to protection by the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see Bd. of Pardons v. Allen*, 482 U.S. 369 (1987). A prisoner's unilateral expectation, particularly where prison officials retain complete discretion regarding an ultimate determination, does not create a constitutionally protected entitlement or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). A prisoner has a liberty interest in the possibility of parole if, but only if, state law creates a legitimate expectation of parole release by the use of mandatory language limiting the discretion of the Parole Board. *See Allen*, 482 U.S. at 373-75. In the absence of a state-created liberty interest, the Parole Board can deny release on parole for any reason or no reason at all, and the Due Process Clause has no application. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236 (6th Cir. 1991).

In numerous cases, this court has reviewed Michigan law and has found a complete absence of mandatory language or the imposition of substantive predicates restricting the Parole Board's discretion. Michigan statutes merely define those prisoners not eligible for parole and list factors that the Parole Board may or may not consider in its decision to grant or deny parole, without directing a specific result. *See* MICH. COMP. LAWS §§ 791.233b, .234, .235. No statutory provision requires parole for any eligible prisoner under any circumstances. The statute makes release on parole expressly discretionary. MICH. COMP. LAWS § 791.234(7).[3]

Relying upon these provisions of Michigan law, the Sixth Circuit Court of Appeals has authoritatively held that the Michigan system does not create a liberty interest in parole. *Sweeton*

---

[3] The Michigan parole statutes have been amended several times in recent years. The statutory citations contained above are to the present codification of the parole law. None of the recent amendments are material to the issues now before the court. Release on parole has always been discretionary under Michigan law.

*v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc).  In unpublished decisions following *Sweeton*, the Sixth Circuit has repeatedly held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole.  *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990).  Further, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system.  *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his thirty-year maximum sentence, he has no reasonable expectation of liberty.  In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim.  *See Haynes*, 1990 WL 41025, at *1.  The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained."  *Greenholtz*, 442 U.S. at 11.  The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right.  In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

Plaintiff also argues that the Parole Board improperly scored his MDOC Parole Guidelines Scoresheet so that he did not receive a "high probability of parole."  The presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole."  As stated by the United States Supreme Court, a state's

scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the Parole Board. *See Sweeton*, 27 F.3d at 1164 n.1 (noting that MICH. COMP. LAWS § 791.235 listed " a large number of factors to be taken into account by the board.") Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the Parole Board in assessing whether parole is appropriate. The fact that the Michigan Parole Board must follow their own procedural statutes and regulations regarding parole does not raise an issue of federal due process. *Id.* at 1165. This is particularly so in light of the fact that the guidelines do not state that the prisoner "must" or "shall" be paroled if the prisoner scores in a certain category; rather, the guidelines still speak in terms of probability, thus leaving the ultimate determination of parole release with the Parole Board. In an unpublished decision, the Sixth Circuit found that where the ultimate decision regarding parole rests with the Parole Board, a Michigan prisoner had no protectable interest in a system which determined a "grid score" for when he would be eligible for parole. *Moran*, 1996 WL 304344, at \*2; *accord Aqeel v. Dahlman*, No. 90-3459, 1991 WL 7102, at \*1 (6th Cir. Jan. 25, 1991) (where statute and guidelines place parole decision in hands of the Parole Board, there is no liberty interest). Because Plaintiff has no liberty interest at stake, his claim must fail.

        B.    **Ex Post Facto Clause**

Plaintiff claims that changes in MDOC policy subsequent to his classification screening violated his rights under the Ex Post Facto Clause. Plaintiff challenges Defendants' recommendation that he should participate in Assaultive Offender Therapy, when he was not

originally screened for that program, and changes to the parole guideline scoring system after 1985-86. The Ex Post Facto Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). In *California Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the Ex Post Facto Clause. The Court declined to adopt an interpretation of the Clause that would forbid "any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court established a test inquiring whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A "sufficient risk of increased punishment" involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n.3. Plaintiff failed to allege that the Parole Board's recommendation to participate in the Assaultive Offender Program and that changes in the parole guideline scoring system create a significant risk of prolonging his incarceration.

Although a prisoner's release on parole is discretionary with the Parole Board in Michigan, *see* MICH. COMP. LAWS §§ 791.234(6)(d), (7) and (9), the Court in *Garner v. Jones*, 529 U.S. 244 (2000), observed that the "presence of discretion does not displace the protections of the Ex Post Facto Clause," as the "danger that legislatures might disfavor certain persons after the fact is present even in the parole context." *Id.* at 253. The Court further noted that, "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." *Id.* at 256 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (observing that the reasonableness of discretionary agency action can be gauged by reference to the agency's policies

and practices)). The Court found that in deciding whether an administrative rule pertaining to Georgia's parole system violated the Ex Post Facto Clause, the lower court should have considered a policy statement where it was a "formal, published statement as to how the Board intends to enforce the Rule." *Id.* at 256-57. However, the Court explained that in the Ex Post Facto analysis, it was equally significant that,

> to the extent there inheres in *ex post facto* doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, . . ., we can say with some assurance that where parole is concerned [,] discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Id.* at 253 (internal citations omitted).

It is clear that the controlling inquiry is whether the retroactive application of a later enacted law or policy will create a sufficient risk of increasing the measure of punishment attached to a particular crime. *See Id.* at 250; *Morales*, 514 U.S. at 509. Here, unlike the plaintiff in *Garner*, Plaintiff is not challenging a newly enacted law, written policy or rule. He is simply challenging the Parole Board's *recommendation* that he participate in Assaultive Offender Therapy. Plaintiff also fails to identify any change in law, policy or rule that effects the parole guideline scoring system after 1985-86.[4] The Ex Post Facto Clause provides that "[n]o State shall . . . pass any . . . ex post facto

---

[4] Plaintiff cites *Shabazz v. Gabry,* 123 F.3d 909 (6th Cir. 1997) in his amended complaint to support his claim. In *Shabazz*, the Sixth Circuit held that 1992 amendments to the Michigan parole laws, which modified the timing of parole hearings, did not violate the Ex Post Facto Clause. This case utterly fails to support Plaintiff's claim. Plaintiff also states that he intends to file a Motion for Discovery for the specific parole guideline scoring method used in 1985-86. Plaintiff's claim therefore is only speculative at this time.

Law." U.S. Const., Art. I, § 10, cl. 1. The wording of the Clause "leaves no doubt that it is a prohibition upon *legislative* action." *Seling v. Young*, 531 U.S. 250, 270 (2001) (Scalia, J., concurring) (emphasis in original). The Parole Board's recommendation for Assaultive Offender Therapy is simply not a law within the meaning of the Ex Post Facto Clause. Accordingly, Plaintiff's claims does not implicate the Ex Post Facto Clause.

        C.    **State Law**

Plaintiff asserts a violation of Michigan statute, MICH. COMP. LAWS § 791.235(5), during his parole interview. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Accordingly, a state's failure to comply with its own law, rule or regulation does not by itself state a claim under § 1983. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985). To the extent that Plaintiff's complaint presents allegations under state law, the Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998). Therefore, Plaintiff's state law claims will be dismissed without prejudice.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. § 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>April 11, 2006</u>            /s/ Wendell A. Miles
                                        Wendell A. Miles
                                        Senior U.S. District Judge